UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERESA LYNN SLATTERY,

Plaintiff,

v. CASE NO. 3:26-cv-278-SJH

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_______________________________/

## MEMORANDUM ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application under the Social Security Act ("Act") for Disability Insurance Benefits ("DIB"). In a decision dated November 21, 2025, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability from September 10, 2024, the alleged disability onset date, through the date of decision. Tr. at 10–21. For the reasons herein, the Commissioner's decision is due to be **affirmed**.

### I. Issue on Appeal

Plaintiff argues a single issue on appeal, contending that "[t]he ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's impairments, in particular the effects of her recurrent headaches and her significant chronic mental impairments,

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

resulting in a decision that is not supported by substantial evidence." Doc. 12 at 1 (emphasis removed).[2] I find that the argument lacks merit.

**II. Standard of Review**

Plaintiff appeals the denial of her application for DIB under Title II of the Act, 42 U.S.C. § 401 *et seq.*[3] Under 42 U.S.C. § 405(g), judicial review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *2 (11th Cir. Dec. 28, 2023).[4]

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept

[2] Plaintiff's briefing is at times scattershot and not a model of clarity. *See generally* Doc. 12. To the extent, within the discussion of the specific issue Plaintiff raises, Plaintiff buries argument as to other issues that have not been properly raised or developed, any such issues or arguments are not properly before the Court and need not be considered. *See Garrett v. Comm'r, Soc. Sec. Admin.*, No. 21-11749, 2022 WL 3226308, at *3 (11th Cir. Aug. 10, 2022); *Hemmelgarn v. Bisignano*, No. 8:24-cv-2723-CPT, 2026 WL 864993, at *9 (M.D. Fla. Mar. 30, 2026); *Jimenez v. Bisignano*, No. 8:24-cv-2509-AAS, 2025 WL 2860069, at *3 n.5 (M.D. Fla. Oct. 9, 2025); *Mecias v. Comm'r of Soc. Sec.*, No. 6:20-cv-2353-LHP, 2022 WL 3716738, at *5 n.9 (M.D. Fla. Aug. 29, 2022); *see also In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1092 (11th Cir. 2023); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023). To the extent the undersigned nevertheless discusses any such issues or arguments herein, it is merely to explain, in the alternative, why they would not warrant reversal even if properly raised and considered.

[3] The regulations under Title II are located at 20 CFR pt. 404.

[4] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289–90 (11th Cir. 2000); 11th Cir. R. 36-2.

as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "more than a mere scintilla" of evidence, the threshold for this standard "is not high[,]" *id.* (citation omitted), and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it "would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. A reviewing court may not "decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306 (citation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315–16 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

On review, "it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275–76 (11th Cir. 2024) (citations omitted); *see also Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at *7

(M.D. Fla. May 25, 2023); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *4 (M.D. Fla. Feb. 9, 2022).

## III. The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A).[5] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. § 404.1520(a)(4).[6]

The ALJ applied this five-step sequential process. Tr. at 11–21.[7] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2024, the alleged disability onset date. *Id.* at 12. The ALJ found at step

[5] Because the definitions of disability under Title II and Title XVI are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

[6] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments. At step three, the person may show the impairment or combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing, at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 404.1520(a)(4); *Flowers*, 97 F.4th at 1308; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3–4 (M.D. Fla. July 26, 2024).

[7] Title II of the Act "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citation omitted). The ALJ found Plaintiff meets the insured status requirements through December 31, 2029. Tr. at 12.

two that Plaintiff had "the following severe impairments: migraine headaches, mild asthma, lumbar disc disease, peripheral vascular disease, depressive disorder, anxiety disorder, bipolar disorder, gastroesophageal reflux disease (GERD), posttraumatic stress disorder (PTSD), irritable bowel syndrome, tinnitus, and plantar fasciitis (20 CFR 404.1520(c))." *Id.* (emphasis removed). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) with limitations. The claimant can lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently. The claimant can sit for up to 6 hours, stand for up to 2 hours, and walk for up to 2 hours in an 8-hour workday. The claimant can use foot controls no more than occasionally. The claimant can reach overhead no more than frequently. The claimant can never climb ladders or scaffolds. The claimant must not work around unprotected heights. The claimant must not work in environments with more than a moderate level of noise. The claimant must not have concentrated exposure to humidity, wetness, dust, fumes, or gases. The claimant must not work in environments with temperature extremes. The claimant is limited to the performance of simple tasks with simple work-related decisions. The claimant must have no more than frequent interaction with supervisors, coworkers, and the general public. The claimant would be off task up to 10% of an 8-hour workday.

*Id.* at 14 (emphasis removed). The ALJ found at step four that Plaintiff was unable to perform any past relevant work, but found at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform such that she was not under a disability from the alleged disability onset date through the date of decision. *Id.* at 19–21.

## IV. Discussion

Plaintiff argues on appeal that "[t]he ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's impairments, in particular the effects of her recurrent headaches and her significant chronic mental impairments, resulting in a decision that is not supported by substantial evidence." Doc. 12 at 1 (emphasis removed). More specifically, Plaintiff primarily argues that the ALJ erred in that his explanation is "highly conclusory [in] nature and his explanation for discrediting Therapist Conn[e]lly's and Dr. Foster's opinions on the basis that it 'appeared' that these medical sources relied improperly on the claimant's statements" is "a mere assertion" that is not supported by substantial evidence. *Id.* at 15–17. Plaintiff argues that these "global defects" require remand. *Id.* at 15. Plaintiff separately argues that the RFC is insufficient or inadequately explained with respect to limitations related to Plaintiff's headaches, *id.* at 18–19, and with respect to Plaintiff's mental impairments, *id.* at 19–21. Finally, and relatedly, Plaintiff argues that substantial evidence does not support the ALJ's discussion of her subjective statements concerning her symptoms. *Id.* at 21–22. I am unpersuaded.

The ALJ properly explained, and substantial evidence supports, the ALJ's reasoning. At step three, the ALJ stated in pertinent part:

> Although the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of

any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has moderate limitation. At the hearing, she testified that she has a bachelor's degree, and the record shows a history of skilled employment. Her memory is not as good as it was, and she forgets to take her medications at least 3 times a week. Treatment records describe her memory as grossly intact and intact and generally show normal thought processes and thought content. Her fund of knowledge is described as being average. The record does not establish significant cognitive deficits.

In interacting with others, the claimant has moderate limitation. At the hearing, she testified that she does not interact well with most people. She has one friend that she gets along well with. She experienced friction with her coworkers and boss before she stopped working. Treatment records describe her as being interactive and pleasant, and do not suggest difficulty interacting with medical personnel. The record does not demonstrate significant difficulty interacting with other people.

With regard to concentrating, persisting or maintaining pace, the claimant has moderate limitation. At the hearing, she testified that she has difficulty following a television show or a magazine article, but she can probably follow 4-step written instructions. Treatment records describe her attention and concentration as good. The evidence of record as a whole suggests that she experiences moderate difficulty concentrating, persisting, or maintaining pace as a result of the symptoms she experiences from mental impairment.

> As for adapting or managing oneself, the claimant has experienced no limitation. Treatment records describe her insight as good or excellent, and her judgment as intact or excellent. She is also indicated as having excellent impulse control. The record does not establish limitation in this area.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

Tr. at 12–14.

Following that discussion, at step four, in evaluating the RFC, the ALJ later specifically stated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

At the hearing, the claimant testified that she is right-handed. She drives 3 to 4 times a week, and she goes to the gym a couple of times a week, picks groceries up, and takes her son to school functions. She has a bachelor's degree. She has not worked since September 2024. In September 2024, she began having difficulties keeping up with her work assignments and she also experienced a fall. She has previously worked as a Property Accountant and an Account Analyst. She believes she is unable to work because of pain and mental issues. Most of her pain is from her back and her head. She began having headaches in 2005. She has had physical therapy for her neck, injections in her back, physical therapy for her back, acupuncture, and massage therapy. She takes medications for her headaches, and they take the edge off of her headaches. Her back problems began in 2003 or 2004. Her back treatments help temporarily. Her back pain has become worse over time, and her average back pain is an 8 out of 10 without medication and a 7 out of 10 with medication. She can sit for 30 to 45 minutes, walk for 15 to 20 minutes, and stand for 15 to 30 minutes. She can lift and carry about 10 pounds comfortably. She experiences emotional dysregulation and is thrown off by simple things. Medications are minimally helpful and cause tiredness. She does not interact well with most people. She has one friend that she gets along well with. She has difficulty making day-to-day decisions. Her memory is not as good as it was. She forgets to take her medications at least 3 times a week. She has difficulty following a television show or a magazine article. She can probably follow 4-step written instructions. In a typical day, she sits on the patio, goes to the gym and/or the store, takes care of pets, and does some light household chores. She occasionally takes her son places and watches him play tennis. She runs a vacuum machine and does dishes. She takes her dog for a walk once or twice a month. She likes to be outside in nature, and she likes to meditate. How she feels affects her consistency in being able to do things. Her headaches often begin as a pressure kind of pain around her head. This happens every other day to every 3 to 4 days. She has more severe headaches once a month to 3 times a month. She elevates her legs 60 to 70% of the day to prevent swelling and pain. She has fallen twice

because of loss of balance. Friction was present with her coworkers and boss before she stopped working.

Upon review of the relevant medical evidence of record addressing the claimant's severe impairments, the undersigned notes the following. In September 2025, Sabrina Connelly, Licensed Mental Health Counselor (LMHC), completed a Mental Residual Functional Capacity Questionnaire. A diagnosis of chronic PTSD was indicated. It was opined that she would have difficulty in various mental health areas more than 20% of the time or would be unable to function in these areas on a regular basis. She would have difficulty understanding, remembering, and carrying out short and simple instructions between 11 and 20% of the time. She would have difficulties interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in unfamiliar places no more than 10% of the time. She was capable of managing benefits in her own best interest, and her symptoms and limitations had been applicable since September 10, 2024 (Exhibit 22F). This opinion is largely unpersuasive, as it is not supported by or consistent with contemporaneous treatment records as well as other records from Ms. Connelly, which show normal mental status examination findings from December 2024 through September 2025 (Exhibit 21F). Additionally, the opinion appears to be based upon the claimant's self-report and is not consistent with the severity level suggested by the other objective mental health evidence of record.

In March 2025, she was given a consultative physical examination by John Foster, M.D. She reported a history of spine disorders, migraines, vertigo, and left ankle/foot pain. On examination, respiratory and cardiovascular findings were normal. Spinal findings were also normal, including normal straight leg raise testing in both seated and supine positions. Extremity findings were normal, including 5/5 strength in all extremities. Grip strength was 5/5 bilaterally. She was able to raise her arms above her head. She was able to pinch, grasp, and manipulate objects. Her dexterity skill was rated as 5/5. She was able to make a full fist with both hands and could oppose the thumb and all fingers on the right and left. Sensation was normal to light touch and pinprick, Romberg testing was normal, and reflexes were normal. She had no difficulty and needed no assistance getting on and off the examination table. Tandem walking, heel walking, and walking on toes were all normal. She was able to squat and rise without difficulty. Finger to nose testing was smooth and accurate with no difficulty. Her gait and station were normal, and she did not use an assistive device to ambulate. She

had full use of both upper extremities. All range of motion was normal. Assessments were normal examination and classical migraines by history. Dr. Foster opined that she was able to sit, stand, walk, lift, carry, handle objects, speak, travel, understand, remember, concentrate, persist, interact socially, and adapt. She was intermittently incapacitated by migraine headaches (Exhibit 12F). This opinion is partially persuasive, as the opined mental functions are outside of Dr. Foster's area of specialty, and the opinion that she is intermittently incapacitated by migraine headaches appears to be based on the claimant's self-report.

In January 2025, Loc Kim Le, M.D. reviewed the claimant's medical records for the State agency and opined that she was capable of performing light exertional work with postural limitations (Exhibit 1A). In March 2025, Paul Sporn, M.D. reviewed the claimant's medical records for the State agency and opined that she was capable of performing light exertional work with postural and environmental limitations (Exhibit 3A). These opinions are not persuasive, as the undersigned finds sedentary exertional work to be more appropriate as a result of the claimant's physical impairments, including lumbar disc disease, plantar fasciitis, and migraine headaches.

Also in January 2025, Janice Miller, Ph.D. reviewed the claimant's medical records for the State agency and opined that she had no limitations in understanding and memory. She could remember and understand work procedures. She could carry out work instructions independently and make work-related decisions. She could become irritated with others or overwhelmed at times if stressed, and this could affect her ability to carry out work-related tasks. She could ask simple questions and maintain appropriate behavior, grooming, and hygiene. She was anxious around others and could become irritated at supervisors if she felt pressured or unsure and could also become irritated with coworkers if stressed. Her adaptive functioning appeared to be generally intact, but she would benefit from support when dealing with change in the work setting (Exhibit 1A). This opinion was affirmed by Brian McIntyre, Ph.D. in March 2025 (Exhibit 3A). These opinions are generally persuasive, as they are supported by the consultants' reviews of the record and are largely consistent with the severity level suggested by the other objective mental health evidence of record.

Other evidence includes medical records from the Veterans Administration (VA) dated in October 2025 which show mental status examination findings including euthymic mood and appropriate affect,

grossly intact memory, good insight, intact judgment, reality-based perceptions, logical thought process and association, relevant thought content, and average fund of knowledge. She reported a reduction in her negative mood and stress and expressed excitement for upcoming trips (Exhibit 25F). In September 2025, records from Connelly Counseling show that she was oriented times three, and had euthymic mood, congruent affect, excellent insight, excellent judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, unremarkable perception, and intact functional status (Exhibit 21F). In August 2025, VA mental status findings were also largely normal, including normothymic mood, appropriate affect, grossly intact memory, good insight, intact judgment, goal oriented and logical thought process, relevant thought content, and average fund of knowledge (Exhibit 25F). Right and left foot imaging performed in September 2025 was normal (Exhibit 23F). In August 2025, she was seen at McGreevy Neurohealth with complaints of radiating low back pain. Examination findings included tenderness to palpation of the lumbar paraspinal muscles, reduced range of motion, and positive straight leg raise testing at 30 degrees. An MRI of the lumbar spine from March 2025 showed multilevel intervertebral disc space height and signal loss with bulging and facet hypertrophy, stable multilevel disc bulges and mild spinal canal stenosis, stable mild bilateral foraminal stenosis at L5-S1, stable slight retrolisthesis at L5-S1, and modic changes at L5-S1 (Exhibit 20F). In June 2025, mental status examination findings included depressed mood, appropriate affect, grossly intact memory, good insight, intact judgment, reality-based perceptions, normal thought processes and thought content, and average fund of knowledge (Exhibit 15F). Also in June 2025, a biopsy of her upper gastrointestinal tract showed signs of reflux within the esophageal lining (Exhibit 15F). In May 2025, she was seen with complaints of foot pain. Assessments included bilateral pes planus, which was stabilized with shoes and insoles, neuritis of the lateral dorsal cutaneous nerve bilaterally which was minimally symptomatic, and left peroneal brevis tendinitis which was intermittently symptomatic (Exhibit 15F). In March 2025, she was noted as having had a fall in September and one a week before her visit. Normal gait was indicated, and assessments included uncomplicated asthma (Exhibit 19F). Also in March 2025, cervical spine findings included tenderness and reduced range of motion. Mild right upper parathoracic tenderness to palpation was also indicated. These findings were present after a fall in which she hit her head on a metal chair. Cervical spine imaging showed straightening of the normal cervical lordosis and mild degenerative changes (Exhibit 15F). In February 2025, a PHQ-9 score was consistent

with moderately severe symptoms, and a GAD-7 score was consistent with moderate symptoms (Exhibit 11F). In January 2025, mental status findings were largely normal, including euthymic mood, grossly intact memory, good insight, intact judgment, normal thought processes and thought content, and average fund of knowledge (Exhibit 11F).

On September 6, 2024, Sandhya Behera, M.D. recommended that she not exceed working 5 hours a day until September 20, 2024 (Exhibit 18F). Also in September 2024, she reported feeling overwhelmed at work and felt it was not possible to complete her job duties in the time she was being given. Subsequent mental status findings in November 2024 included a euthymic mood, broad affect, interactive and pleasant, normal thought processes, no depressive or manic cognitions, lucid thought content, no evidence of perceptual disturbance or delusional ideation, and future-oriented (Exhibit 4F). In August 2024, she was seen and treated for a concussion and a head injury following a slip and fall in which she struck her right forehead on the edge of some furniture. A CT of the head/brain showed unremarkable white matter and no evidence of acute intracranial process (Exhibit 3F).

In October 2023, VA records indicate that she reported an onset date of 2005 for her migraine headaches (Exhibit 17F).

The undersigned finds that such evidence supports the limitations in the residual functional capacity assessment set forth above. The record indicates complaints of migraine headaches. The undersigned notes that pursuant to Social Security Ruling 19-4p, we consider the extent to which a claimant's impairment-related symptoms are consistent with the evidence in the record in evaluating migraine headaches. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. The record does not suggest significant difficulty sustaining attention and concentration. The objective medical evidence of record also does not establish frequent treatment for headaches and does not document headache occurrence and symptom severity to the extent alleged. Additionally, the record does not establish that the claimant has received neurological recommendations for additional specialized care, as would be expected in the presence of debilitating headaches. Further, a CT of the head/brain was normal, and did not show white matter or remnants of severe migraine headaches as can be present when migraine headaches have been experienced for an extended period of time.

> The undersigned finds that the claimant's physical impairments cause no more than mild to moderate limitations, and do not preclude her from performing the minimal exertional requirements of sedentary work. Significantly, findings were normal at her March 2025 consultative physical examination, and Dr. Foster did not opine that she had any limitations. Notably, she testified at the hearing that she drives on a regular basis, goes to the gym, goes to the store, takes care of pets, walks her dog, takes her son to school functions, and does some light household chores such as vacuuming and washing dishes. Such activities and abilities are consistent with an ability to perform a reduced range of sedentary exertional work and are inconsistent with the alleged frequency and severity of her headaches. The record also shows a history of her headaches not precluding her from working, as she testified that her headaches began in 2005.
>
> With regard to mental impairment, the record shows mental health treatment but does not establish the continued presence of symptoms of such severity as to prevent the performance of all work. The evidence primarily shows that she experiences depression and anxiety. Mental health examination findings do not show significant ongoing abnormalities, and do not indicate significant difficulties with cognitive functioning, reality perception, memory, attention and concentration, insight and judgment, violent ideations, or psychotic processes. Her level of mental impairment appears to be no more than moderate in degree, and the evidence does not suggest that she is unable to perform even simple tasks. The residual functional capacity assessment set forth above contains restrictions on the type of work she is to perform and the social interaction she is to engage in to account for her mental limitations.

*Id.* at 14–19.

Contrary to Plaintiff's premise, the ALJ's discussion is not "highly conclusory" in nature. Nor did the ALJ err with respect to the discussion concerning Ms. Connelly or Dr. Foster. Plaintiff does not argue (nor realistically could she) that the ALJ failed to adequately consider the supportability and consistency factors as their opinions.[8]

[8] In determining the persuasiveness of a medical source's medical opinions, supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ *must* explain

And the ALJ's observation, that their opinions appeared to rely on Plaintiff's statements, is a proper consideration. *See, e.g.*, *Nardelli v. Comm'r of Soc. Sec.*, No. 23-11581, 2024 WL 565383, at *5 (11th Cir. Feb. 13, 2024) ("[B]ut that opinion [by a psychologist] was apparently based entirely on [the claimant's] subjective reports. So the ALJ was entitled to consider that statement in context and weigh it accordingly."); *Russo v. Comm'r of Soc. Sec.*, No. 6:24-cv-1621-JSS-UAM, 2025 WL 1456879, at *3 (M.D. Fla. May 5, 2025) ("Further, the ALJ considered the supportability of [the doctor's] opinion. The ALJ pointed out that [the doctor] relied on Plaintiff's self-reports rather than objective observation. Plaintiff's mental status, the objective portion of [the doctor's] assessment, was largely normal or benign, and Plaintiff was noted to be friendly and cooperative, maintaining appropriate eye contact throughout the interview." (internal citations omitted)), *report and recommendation adopted*, 2025 WL 1456589 (M.D. Fla. May 21, 2025); *Rollinger v. Comm'r of Soc. Sec.*, No. 6:23-cv-868-DCI, 2024 WL 2795810, at *5 (M.D. Fla. May 31, 2024) ("The ALJ permissibly discounted [the claimant's psychologist's] opinion based on the ALJ's determination

---

the consideration of these two factors and *may*, but need not, explain consideration of the others. *Id.* As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In short, "the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Perron v. O'Malley*, No. 8:23-cv-2051-WFJ-SPF, 2024 WL 4144163, at *6 (M.D. Fla. July 29, 2024), *report and recommendation adopted*, 2024 WL 3948889 (M.D. Fla. Aug. 27, 2024); *see also Barber v. Comm'r of Soc. Sec.*, No. 6:20-cv-1222-LRH, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021).

that [the psychologist's] opinion was based primarily on Claimant's subjective complaints, and not [the psychologist's] own objective mental status examinations."); *see also Ervin v. Comm'r of Soc. Sec.*, No. 22-cv-10892, 2023 WL 5803698, at *4 (E.D. Mich. Sept. 7, 2023).[9]

Plaintiff does not suggest otherwise, arguing instead that the observation was a mere conclusory assertion—but that is not so. Among other things, the ALJ explained that (i) Ms. Connelly's own records, including contemporaneous treatment records, showed "normal mental status examination findings" from December 2024 to September 2025, which, unlike her opinions as to severity, was consistent with other objective mental health evidence (such as from the Veterans Administration); and (ii) Dr. Foster's own examination and assessment findings were "normal," with any opinions as to migraine incapacitation, outside his area of specialty, based on patient history. Tr. at 15–17. Substantial evidence supports these nonconclusory assertions.

[9] To the extent Plaintiff through her argument attempts to implicitly revert to the old treating-physician rule, such is further unpersuasive. *See, e.g.* Doc. 12 at 6, 17. Though ALJs were previously "instructed to defer to the medical opinions of a social security claimant's treating physicians" and to give such opinions more weight "unless there was good cause not to do so[,]" that rule was eliminated in 2017. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896–97 (11th Cir. 2022). For claims, like this one, filed on or after March 27, 2017, "an administrative law judge must 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.'" *Id.* at 897 (citation omitted); *see also Spurgeon v. Soc. Sec. Admin., Comm'r*, No. 22-10999, 2024 WL 1395258, at *1, 4–5 (11th Cir. Apr. 2, 2024); *Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 n.* (11th Cir. Sept. 8, 2023); *Thomas v. Comm'r of Soc. Sec.*, No. 3:23-cv-1243-SJH, 2024 WL 4764465, at *3–4 & n.9 (M.D. Fla. Nov. 13, 2024); *Sunderman v. O'Malley*, No. 8:23-cv-1367-AAS, 2024 WL 3811933, at *5 (M.D. Fla. Aug. 14, 2024). Moreover, even if the former treating-physician rule applied (which it does not), the ALJ's analysis would provide a good-cause basis for discounting a treating-physician's opinion. *E.g.*, *Watkins v. Comm'r, Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *12 (11th Cir. Jan. 2, 2025).

*E.g., id.* at 885, 1237, 1240, 1243, 1247, 1250, 1253, 1256, 1259, 1265, 1268, 1271, 1274, 1277, 1280, 1302–03, 1328.

Plaintiff's argument that the ALJ erred in evaluating her subjective symptoms is similarly unavailing. The ALJ explained *inter alia*, with substantial evidence supporting, that Plaintiff's subjective statements were inconsistent with the objective medical evidence (including normal mental status findings); Plaintiff's conservative treatment (and lack of recommendations for specialized care); and Plaintiff's activities of daily living (including a history of headaches, which were stated to have begun in 2005, not preventing her from working).[10] *Id.* at 13–19. These explanations suffice. *See, e.g.*, *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020); *Wright v. Bisignano*, No. 8:24-cv-2819-JRK, 2026 WL 865399, at *9 (M.D. Fla. Mar. 30, 2026); *Cooper-Neal v. Kijakazi*, No. 8:22-cv-2420-AEP, 2023 WL 8947174, at *4–5 (M.D. Fla. Dec. 28, 2023).

Finally, with the Court having addressed and dispelled Plaintiff's alleged "global defects"—and having explained why the ALJ did not err in evaluating the medical evidence or Plaintiff's subjective symptoms—Plaintiff's remaining contention

[10] To the extent Plaintiff suggests that her testimony that her headache symptoms increased following a concussion in August 2024 carries the day, *e.g.*, Doc. 12 at 2–3, the ALJ properly explained and discussed post-concussion evidence supporting the ALJ's analysis, including, for example, a normal CT scan that was unremarkable as to white matter with no evidence of acute intracranial process, Tr. at 18, 502, 504; *see also Lopez v. Comm'r of Soc. Sec.*, No. 23-11510, 2023 WL 8814411, at *6 (11th Cir. Dec. 20, 2023); *Schillace v. Comm'r of the Soc. Sec. Admin.*, No. 8:24-cv-2117-CPT, 2025 WL 2470008, at *4, *6 (M.D. Fla. Aug. 28, 2025); *Cooper-Neal v. Kijakazi*, No. 8:22-cv-2420-AEP, 2023 WL 8947174, at *4–5 (M.D. Fla. Dec. 28, 2023); *Hickman v. Comm'r of Soc. Sec.*, No. 6:22-cv-2267-PGB-LHP, 2023 WL 9197938, at *4, *8 (M.D. Fla. Dec. 18, 2023), *report and recommendation adopted*, 2024 WL 128018 (M.D. Fla. Jan. 11, 2024).

that the ALJ otherwise erred in not imposing a more restrictive RFC also fails. *See, e.g.*, *Lopez v. Comm'r of Soc. Sec.*, No. 23-11510, 2023 WL 8814411, at *3, *5–6 (11th Cir. Dec. 20, 2023); *Schillace v. Comm'r of the Soc. Sec. Admin.*, No. 8:24-cv-2117-CPT, 2025 WL 2470008, at *4–6 (M.D. Fla. Aug. 28, 2025); *Faiz v. Comm'r of Soc. Sec.*, No. 6:22-cv-1978-DNF, 2024 WL 1048086, at *6 (M.D. Fla. Mar. 11, 2024); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *2–3 (M.D. Fla. Feb. 9, 2022). Indeed, other than as already discussed, Plaintiff does not point to any evidence requiring a greater RFC than the restrictive RFC (which precluded past work) imposed by the ALJ after thoroughly reviewing the evidence.

To the extent Plaintiff suggests error because the ALJ did not impose any greater restrictions despite deeming "the State Agency nonexamining psychological findings" including by Dr. McIntyre to be "generally persuasive" the undersigned disagrees. Doc. 12 at 19–20. Plaintiff argues that the generally persuasive findings of Dr. McIntyre included: (i) that Plaintiff could "become irritated with others or overwhelmed at times if stressed which can affect her ability to carry out work related tasks"; and (ii) that Plaintiff "would benefit from support when dealing with change in the work setting." *Id.* (citations omitted). But (i) although Dr. McIntyre indicated that Plaintiff "can become irritated at supervisors if she feels pressured or unsure and can also become irritated with coworkers if stressed" he also concluded that "[s]he remains able to ask simple questions and can maintain appropriate behavior, grooming and hygiene"; and (ii) although he indicated that "she would benefit from support

when dealing with change in the work setting" he also concluded that her "[a]daptive functioning appears generally intact[.]" Tr. at 99–100. Dr. McIntyre also stated that Plaintiff "remains able to remember and understand work procedures" and "remains able to carry out work instructions independently and can make work related decisions[.]" *Id.* at 16–17, 99. And the ALJ's restrictive RFC properly limited Plaintiff. *See id.* at 14 ("The claimant is limited to the performance of simple tasks with simple work-related decisions. The claimant must have no more than frequent interaction with supervisors, coworkers, and the general public. The claimant would be off task up to 10% of an 8-hour workday."). Plaintiff argues that the limitations are insufficient insofar as "the RFC *facially* fails to describe any concentration, persistence, or pace" ("CPP") "deficit beyond the 10% off task limitation[.]" Doc. 12 at 20. "But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in" CPP "courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to" CPP "where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies."); *Andrews v. Dudek*, No. 8:24-cv-205-WFJ-TGW, 2025 WL 920565, at *7 (M.D. Fla. Feb. 28, 2025) ("The plaintiff argues, vaguely, that the RFC is deficient because it does not include 'pacing

or production limitations'. This argument fails because Eleventh Circuit law holds that an RFC for simple, routine tasks sufficiently accounts for moderate limitations in CPP when there is medical evidence supporting that conclusion, which is present here." (internal citation omitted)), *report and recommendation adopted*, 2025 WL 917374 (M.D. Fla. Mar. 26, 2025). Plaintiff has not shown more restrictive limitations were required, and absent evidence that any off-task limitation of greater than 10% was needed, the ALJ cannot have erred by giving Plaintiff the benefit of a 10% limitation. *See Schofield v. O'Malley*, No. 8:22-cv-2384-CEH-SPF, 2024 WL 1270500, at *11 (M.D. Fla. Mar. 26, 2024); *see also Gaines v. Bisignano*, No. 3:25-cv-1859-JJH, 2026 WL 1642890, at *10 (N.D. Ohio June 8, 2026), *report and recommendation adopted*, 2026 WL 1805501 (N.D. Ohio June 23, 2026); *Sandra M. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-cv-400-RGV, 2024 WL 6874239, at *18–19 (N.D. Ga. Mar. 27, 2024); *Mohamed v. Saul*, No. 3:18-cv-2015-SALM, 2019 WL 3928585, at *10–11 (D. Conn. Aug. 20, 2019).

## V. Conclusion

Accordingly, it is **ordered**:

1. The Commissioner's decision is **affirmed**.

2. The Clerk of Court is **directed** to enter judgment accordingly, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on October 26, 2026.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:
Counsel of Record